Case 20-06265-wlh    Doc 57    Filed 03/22/22    Entered 03/22/22 15:40:52    Desc Main
Document    Page 1 of 10

**IT IS ORDERED as set forth below:**



**Date: March 22, 2022**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 20-69324-WLH |
| ANTOINE FITZGERALD GROSS, | CHAPTER 13 |
| Debtor. | |
| IDEAL DEVELOPMENT CONCEPTS, LLC, | ADVERSARY PROCEEDING NO. 20-6265-WLH |
| Plaintiff, | |
| V. | |
| ANTOINE FITZGERALD GROSS, | |
| Defendant. | |

**ORDER ON COMPLAINT AFTER TRIAL**

1

**THIS MATTER** is before the Court after trial on a dischargeability Complaint under 11 U.S.C. §§ 523(a)(2) and (a)(4).[1] Debtor hired Ideal Development Concepts, LLC ("Ideal") to perform cleaning, repair, and restoration services after a fire at the Debtor's home. Ideal contends Antoine Fitzgerald Gross ("Gross" or "Debtor") forged Ideal's stamp on two checks from his insurer and deposited the monies into his personal checking account. Gross asserts that he did not forge Ideal's stamp and that he had consent from Ideal's agent to cash the checks. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J), and the Court has jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 1334 and 157. For the reasons given below, the Court finds the Ideal Debt (defined below) in the amount of $69,089.07 is nondischargeable pursuant to section 523(a)(4).

I.     FACTS

A fire significantly damaged Gross's home located at 1333 Jimson Circle, Conyers, GA on November 19, 2015. Five days later, Gross signed an agreement with Ideal authorizing it to perform cleaning, repair, and restoration services to his residence for the contracted price of $242,895.96. The payment terms required Gross to assign all insurance monies from his insurer USAA to Ideal, via USAA's servicing agent Select Portfolio Services Inc. Typically, payments from the insurer are made payable to the insured and the contractor and are frequently sent directly to the contractor. When Ideal receives a check, it stamps it with a stamp "For deposit only," and Ideal's bank account number. A project manager then takes the check to the homeowner for endorsement. Ideal then deposits the check in its account. When a check made

---

[1] Ideal did not list section 523(a)(6) as a separate cause of action in the Complaint, but it indicated on the cover sheet to the complaint that the nature of the lawsuit related to dischargeability pursuant to section 523(a)(6) and alleged "[b]y forging Ideal's endorsement and depositing the Checks, Gross obtained money causing willful and malicious injury to property belonging to Ideal." (Doc. No. 1 at 8.) In the Pretrial Order, Ideal identifies the issues for trial as whether the debt was non dischargeable under sections 523(a)(4) and (a)(2). (Doc. No. 32 at 5.) The pretrial order supersedes the pleadings. State Treasurer of State of Michigan v. Barry, 168 F.3d 8, 9–10 (11th Cir. 1999).

payable to both the insured and contractor is delivered to the insured, the insured must deliver the check to Ideal for deposit into Ideal's account in accordance with the proceeds assignment in the contract. The only persons at Ideal authorized to endorse a check are officers of the company.

Ideal, under the supervision of project manager Steve Cooper, began repairs to the home after the execution of the contract. By at least February 9, 2016, Gross was unhappy with Ideal's work (or lack thereof) and asked Ideal to stop working. Gross complained that Ideal did not work on the project regularly, performance was late, and the work was unsatisfactory. Ideal agreed with the insurer to accept $69,089.07 for the work performed but for which payment had not been made ("Ideal Debt"). Gross then retained Smith Bailey Restoration to complete the unfinished work. Gross ultimately terminated Smith Bailey before the work was completed and completed the work himself. Ideal did not return to the site to continue work after February 9, 2016.

USAA sent a check for $49,605.24 dated February 8, 2016, and a second check for $19,483.83 dated November 25, 2016. Both checks listed Gross and Ideal as payees and both checks were mailed to Gross' home address. The February check was endorsed with Gross's wet signature and a stamp containing the words "Ideal Del Concepts." The November check was endorsed with Gross's wet signature and the words "Ideal Development Concepts" stamped twice. The stamps do not match the stamp Ideal regularly uses to endorse checks. Gross testified that he signed both checks, but he denied stamping the checks. He stated the checks were both stamped by a foreman named "Juan" who happened to be on site at his home. According to testimony and Ideal time records, no one named "Juan" worked for Ideal at the time or works for them now. Ideal also explained the difference between a foreman and a project manager. The foreman was charged with supervising the onsite construction workers, while the project

3

manager supervised the foreman, oversaw all aspects of the project, including permitting and inspection, and was ultimately responsible for every person on the crew. Ideal would use a project manager to obtain a customer's signature, but not a foreman.

Gross acknowledged he deposited both checks into his personal account with Navy Federal Credit Union. Gross did not inform Ideal he deposited the checks, and Ideal did not discover the checks had been cashed until March 2017. Gross contends he completed a "cash out"' and used the funds to pay for materials to complete home repairs. He presented some bills and invoices in support of his position.

On August 25, 2020, Gross filed a petition under Chapter 13 of the United States Bankruptcy Code and listed an unsecured debt of $69,089.07 to Ideal. On November 20, 2020, Ideal filed an adversary proceeding seeking to determine the Ideal Debt was nondischargeable. Ideal filed a motion for summary judgment, which the Court denied.

The Court held a trial on the Complaint on February 24, 2022, at which Debtor appeared pro se and Ideal appeared through counsel. After considering the evidence presented and argument of the parties, the Court took the matter under advisement.

## II.    DISCUSSION

Ideal seeks a determination that the Ideal Debt is nondischargeable. A presumption exists all debts owed by the debtor are dischargeable unless the party contending otherwise proves nondischargeability by a preponderance of the evidence. 11 U.S.C. § 727(b); Grogan v. Garner, 498 U.S. 279, 287-88 (1991); St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 680 (11th Cir. 1993). The purpose of this "fresh start" is to protect the "honest but unfortunate" debtors. U.S. v. Fretz (In re Fretz), 244 F.3d 1323, 1326 (11th Cir. 2001). Exceptions to discharge are, therefore, narrowly construed against the creditor and in favor of the debtor.

4

Equitable Bank v. Miller (In re Miller), 39 F.3d 301 (11th Cir. 1994); St. Laurent, 991 F.2d at 680. Ideal contends the Ideal Debt arose from forgery and false pretenses and is nondischargeable.[2]

    a.  <u>Forgery</u>

Ideal contends Gross converted $69,089.07 in funds by wrongfully forging Ideal's endorsement on two checks in order to keep the money for his own purposes.

Section 523(a)(4) of the Bankruptcy Code provides a discharge exception for debts obtained "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[3] Larceny or embezzlement need not be in a fiduciary capacity to be nondischargeable; ordinary larceny or embezzlement will suffice. See Transam. Com. Fin. Corp. v. Littleton (In re Littleton), 942 F. 2d 551, 555 (9th Cir. 1991). Larceny is "a felonious taking of property with the intent to convert it or to permanently deprive the owner of it." Burke v. Riddle (In re Riddle), 2011 WL 2461896, *4 (Bankr. N.D. Ga. Apr. 6, 2011) (citation omitted). "Embezzlement is the 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" Ga. Dep't Human Servs. v. Ngwangu (In re Ngwangu), 529 B.R. 358, 365 (Bankr. N.D. Ga. 2015) (quoting Fernandez v. Havana Gardens, LLC, 562 F. App'x. 854, 856 (11th Cir. 2014)). The primary difference between larceny and embezzlement is that with larceny, the debtor wrongfully takes the property from someone else, while with

---

[2] Although the debt arises from a contract, only the amount lost due to forgery or fraud is at issue. It is not disputed that a breach of contract does not create a nondischargeable debt. In re Ahmed, 2011 WL 11718017, *8 (Bankr. N.D. Ga. Dec. 22, 2011); In re Heilman, 241 B.R. 137, 150 (Bankr. D. Md. 1999).

[3] For a debt to be dischargeable pursuant to section 523(a)(4) based on fraud or defalcation, the debtor must have been acting as a fiduciary in accordance with an express or technical trust that existed prior to the wrongful act. In re Newton v. Lemmons (In re Lemmons), 2005 WL 6487216, * 4 (Bankr. N.D. Ga. Dec. 20, 2005) (citation omitted). Ideal did not produce any evidence of an express or technical trust and there is no basis to impose a fiduciary duty on Gross. The absence of a fiduciary duty eliminates the possibility of any debt being nondischargeable as arising from fraud or defalcation while acting in a fiduciary capacity under Section 523(a)(4). Ellis Astin Grading Co. v. Hornyak (In re Hornyak), 2009 WL 6499325 (Bankr. N.D. Ga. Dec. 29, 2009).

embezzlement, the debtor has rightfully come into possession of the property but wrongfully appropriates it for his own use. See In re Knight, 621 B.R. 529, 537 (Bankr. N.D. Ga. 2020). The Court finds embezzlement, rather than larceny, is the proper analysis here because Gross lawfully possessed the insurance checks that were mailed directly to him since he was a joint payee. As other courts have explained, "[c]laims involving forgery and joint checks are generally analyzed in the context of embezzlement rather than larceny." Danbom v. Prewitt (In re Prewitt), 2013 WL 4051881, *2 (Bankr. D.N.M. Aug. 12, 2013).

Embezzlement requires a showing that: "(i) property owned by another is rightfully in the possession of the debtor; (ii) the debtor appropriates the property for personal use, and (iii) the appropriation occurred with fraudulent intent or by deceit." Hot Shot Kids Inc. v. Pervis (In re Pervis), 512 B.R. 348, 382-83 (Bankr. N.D. Ga. 2014). "It is knowledge that the use is devoid of authorization, scienter for short…that makes the conversion fraudulent and thus embezzlement." Lenox Pines, LLC v. Smith (In re Smith), 2021 WL 1234245, *10 (Bankr. N.D. Ga. Mar. 31, 2021). Fraudulent intent may be shown by circumstantial evidence. Cook v. Knight (In re Knight), 621 B.R. 529, 537 (Bankr. N.D. Ga. 2020) (citation omitted). Courts consistently find that concealment on the part of a debtor is evidence of fraudulent intent. Id. Additionally, a lack of consistency or lack of credibility in a debtor's testimony, as well as a perceived lack of truthfulness in testimony, can be indicative of fraudulent intent. Id.

For example, in Prewitt, the court found the debtor lawfully possessed the insurance check as a joint payee. Either he, or an agent acting at his direction, signed the contractor's name and fraudulently diverted the funds to his bank account. The debtor then used the proceeds for purposes other than repairing a skid loader as intended, thus depriving the contractor of the opportunity to use the money to hire another mechanic. The debtor testified that he had no

recollection of how the signature appeared immediately above his own on the check, but the court found the debtor's protestation that he did not forge the signature on the check not credible. The court drew the inference that the debtor, or his agent, forged a signature in order to embezzle the insurance proceeds and, accordingly, the debt was nondischargeable pursuant to section 523(a)(4).

    Here, it is not disputed that Gross was in possession of the checks and that he deposited the checks in his personal account and used the funds. The question, though, is whether the funds were appropriated with fraudulent intent or deceit. Gross argued he used the funds for repair of the home with the consent of an agent of Ideal. But the totality of the circumstances indicates Gross's appropriation of the insurance proceeds was wrongful. Gross contends a foreman named "Juan" endorsed both checks with an Ideal stamp. The Court does not find Gross's explanation credible. Gross asked Ideal to stop work on the property in early February 2016 in large part because Ideal did not consistently work on the project and was late in performance. Moreover, the project manager on the job testified that no one returned to the site once Ideal was asked to stop work. It is not evident why anyone from Ideal was still at the property when Gross received the first check and is inconsistent with his complaints about Ideal's performance. Further, multiple representatives from Ideal testified that no one named "Juan" worked for Ideal, and the company records support this.

    The second check was sent on November 25, 2016, more than nine months after Gross asked Ideal to stop work. Gross testified that, once again, "Juan" stamped the check. Gross did not offer a plausible reason for why an Ideal employee would have been at his property months after he fired Ideal and after another company was hired to complete the work. See First Liberty Bank v. Allen (In re Allen), 1999 WL 33588549 (Bankr. S.D. Ga. Sep. 23, 1999) (totality of the

circumstances indicated appropriation of check was wrongful when employment relationship ended more than a year before debtor received the check). It is also contrary to Gross's own testimony—he stated he was unhappy with Ideal because workers were rarely at his property, and he was frustrated he could not get anyone to complete the repairs on his home.

Moreover, the stamps on the checks are irregular. The stamp on the first check says "Ideal Del Concepts" and the second is stamped twice with "Ideal Development Concepts." Neither matches the stamp Ideal regularly uses and neither included Ideal's account number, which appears on the company stamp. It is highly unlikely the company, which regularly deposits checks, would endorse a check with its name spelled incorrectly.

The Court draws the reasonable inference that Gross, or an agent on his behalf, forged Ideal's stamp in order to embezzle Ideal's insurance proceeds. By depositing the check into his account rather than forwarding the check to Ideal, and by neglecting to promptly pay Ideal from the proceeds, Gross acted in knowing disregard of Ideal's rights. As joint payee of the insurance check and according to the agreement with Gross, Ideal had a right to the insurance check proceeds. The check lawfully came into Gross's hands, but he intentionally and in knowing disregard for Ideal's rights converted the insurance proceeds and applied them to purposes other than paying Ideal. Even if Gross used the funds to repair his home as he contends, he still used the proceeds for purposes other than paying Ideal for the work it did, thus depriving Ideal of the money. Further, Gross concealed his act, as he did not tell Ideal about the checks, which is indicative of fraudulent intent.

The Court concludes that Plaintiff has demonstrated embezzlement by a preponderance of the evidence and, accordingly, the Ideal Debt is nondischargeable pursuant to section 523(a)(4).

b. False Pretenses

Ideal also contends the Ideal Debt arose from false pretenses and is nondischargeable pursuant to section 523(a)(2)(A), which provides a discharge exception for claims "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Because the Court finds the debt nondischargeable pursuant to section 523(a)(4), the Court will not address Ideal's assertion that the Ideal Debt is nondischargeable under section 523(a)(2)(A).

### III. CONCLUSION

For the reasons stated above

**IT IS ORDERED** that the Ideal Debt is nondischargeable pursuant to section 523(a)(4). The Court will enter a separate judgment in favor of Ideal.

**END OF DOCUMENT**

**Distribution List**

Antoine Fitzgerald Gross
1333 Jimson Circle SE
Conyers, GA 30013

Ideal Development Concepts, LLC
3374 Lawrenceville – Suwanee Road
Suwanee, GA 30024

Stephen P. Fuller, Esq.
Attorney for Plaintiff
10475 Medlock Bridge Road
Suite 820
Johns Creek, GA 30097

Nancy J. Whaley, Standing Ch. 13 Trustee
303 Peachtree Center Avenue, Suite 120
SunTrust Garden Plaza
Atlanta, GA 30303